Poidomani v Shop-Rite Supermarkets, Inc. (2024 NY Slip Op 03097)

Poidomani v Shop-Rite Supermarkets, Inc.

2024 NY Slip Op 03097

Decided on June 06, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 06, 2024

Before: Kern, J.P., Moulton, Friedman, González, Pitt-Burke, JJ. 

Index No. 453665/21 Appeal No. 2441 Case No. 2023-04942 

[*1]Joanne Poidomani, Plaintiff-Respondent,
v
Shop-Rite Supermarkets, Inc., et al., Defendants-Appellants, Pepsi-Cola Bottling Company of New York, Inc., Defendant.

Torino & Bernstein, P.C., Mineola (Ellie S. Konstantatos of counsel), for appellants.
Ready Pascale & Gennarelli, P.C., Mineola (Gregory S. Gennarelli of counsel), for respondent.

Order, Supreme Court, New York County (Shlomo S. Hagler, J.), entered October 2, 2023, which, to the extent appealed from, denied defendants Shop-Rite Supermarkets, Inc. and Mannix Family Market &commat; Veterans Road, LLC's motion for summary judgment dismissing the complaint as against defendant Mannix Family Market &commat; Veteran's Road LLC, unanimously affirmed, without costs.
Plaintiff alleges she was shopping at the Shop-Rite Supermarket located at 3010 Veterans Road West, Staten Island, N.Y., when she was struck by a "U-Boat" cart loaded with Pepsi products that was being pushed down the aisle by nonparty Nicholas Styles. Styles was delivering the beverages weighing more than 1,000 pounds during the course of his employment with defendant Pepsi-Cola Bottling Company of New York Inc. It was later conceded that Mannix, and not Shop-Rite Supermarkets, owned and operated the supermarket, which had a contract with Pepsi for its employees to deliver, transport and stock carbonated and non-carbonated beverages onto shelves of the supermarket when the accident occurred.
Although there is no evidence that Mannix created the dangerous condition or received notice that Styles overloaded the U-Boat cart before the accident, Mannix maybe be held vicariously liable for the negligence of its distributor, Pepsi. This is because Mannix, as the owner and operator of the supermarket, a place of public assembly, had a nondelegable duty to the general public to keep its premises safe. Mannix can thus be held vicariously liable for any negligence on the part of Pepsi that caused the premises to be unsafe (see Lanza v B.H.N.V. Realty Corp., 201 AD3d 468, 469 [1st Dept 2022]; Toote v Canada Dry Bottling Co. of N.Y., 7 AD3d 251, 252 [1st Dept 2004]).
Contrary to Mannix's contention, its supermarket did not merely furnish the occasion for the accident. The record shows that there is a triable issue of fact as to whether it was readily foreseeable that a vender's employee would overload the U-Boat while restocking the supermarket's shelves and strike an invitee like plaintiff (see Rosenberg v Equitable Life Assur. Socy. of U.S., 79 NY2d 663, 668-669 [1992]; Porteous v J-Tek Group, Inc., 125 AD3d 411, 412 [1st Dept 2015]; Ortiz v Nunez, 32 AD3d 759, 760 [1st Dept 2006]). The record further shows that Mannix implemented no safety measures to prevent such an accident, even though Pepsi's venders, including Styles, were authorized to restock the supermarket's shelves "throughout the day." That Styles, as Pepsi's employee, caused the accident by pushing the U-Boat into plaintiff, did not create an intervening cause which relieved Mannix of the consequences of its own negligence, since "an intervening act does not break the sequence of cause and effect when it might reasonably have been foreseen" (Henderson v Waldbaums, 149 AD2d 461, 462 [2d Dept 1989]).
Additionally, there are factual issues as to whether Mannix sufficiently exercised control over Pepsi to be vicariously liable [*2]for Pepsi's potential negligence (see Yoon Peng Choo v Fiedler Cos., Inc., 123 AD3d 529, 530 [1st Dept 2014]). Mannix's assistant store manager testified that had he seen the Pepsi employee pushing product stacked so high that he was "sort of blind," he "would have told [Styles] that he can't operate [the U-Boat] that way." Styles also testified that he would always check-in with the manager of the grocery during the course of the day. Accordingly, there is an issue of fact as to whether Mannix could control the manner in which the injury-producing work was being performed before the accident.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 6, 2024