Irizarry v Zelaya (2025 NY Slip Op 07096)

Irizarry v Zelaya

2025 NY Slip Op 07096

Decided on December 18, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 18, 2025

Before: Webber, J.P., Gesmer, González, Higgitt, JJ. 

Index No. 160011/21|Appeal No. 5407|Case No. 2024-04852|

[*1]Edward Irizarry, Plaintiff-Appellant,
v
Ariana Zelaya et al., Defendants-Respondents.

Law Office of Seth L. Marcus, Scarsdale (Seth L. Marcus of counsel), for appellant.
Morris, Duffy, Alonso, Faley & Pitcoff, New York (Ira E. Goldstein, Iryna S. Krauchanka and Kevin G. Faley of counsel), for Betty Lugo and Betty Lugo for Judge, respondents.
Fraiden & Fraiden LLP, Bronx (Mark Fraiden of counsel), for Raymond Cline, respondent.

Order, Supreme Court, New York County (Anar Rathod Patel, J.), entered on or about July 18, 2024, which, insofar as appealed from as limited by the briefs, granted defendants Ariana Zelaya, Betty Lugo, Betty Lugo for Judge, and Raymond Cline's motions to dismiss the complaint and for attorneys' fees, unanimously modified, on the law, to deny the motions as to the defamation claim in part in accordance with this order, vacate the award of attorneys' fees, and otherwise affirmed, without costs.
Plaintiff opposed defendant Betty Lugo in the June 2021 Democratic primary election for the office of Judge of the Civil Court of the City of New York. Defendant Raymond Cline is a political consultant who was hired by Lugo. Defendant Ariana Zelaya was a volunteer for the Lugo campaign. Zelaya alleged that while standing on a public sidewalk in Manhattan, petitioning for Lugo, plaintiff "walked up to [Zelaya], stood very closely to her and aggressively grabbed the petition board from [Zelaya's] hands with force placing her in imminent fear of harm" and also "aggressively yelled at [Zelaya's] in a menacing and intimidating manner with the intent to cause intimidation, harm and fear." Zelaya initiated two actions against plaintiff, both of which were dismissed. Zelaya also filed a complaint with the police, which was dismissed as well. Plaintiff commenced this action for defamation and conspiracy to defame based upon allegedly false statements, made in a campaign flyer and in tweets posted by Zelaya, accusing plaintiff of assaulting or harassing Zelaya and of abusing women more generally.
It is undisputed that this is "an action involving public petition and participation" within the meaning of New York's anti-strategic lawsuits against public participation law (see Civil Rights Law § 76-a[1][a]). The motions to dismiss therefore "shall be granted unless the party responding to the motion demonstrates that the cause of action has a substantial basis in law . . . ." (CPLR 3211[g][1]; see Black v Ganieva, 236 AD3d 427, 428 [1st Dept 2025]; Reeves v Associated Newspapers, Ltd., 232 AD3d 10, 20-24 [1st Dept 2024], lv dismissed 44 NY3d 990 [2025]).
The conspiracy to defame claim was properly dismissed because "New York does not recognize a substantive tort of conspiracy" (Jebran v LaSalle Bus. Credit, LLC, 33 AD3d 424, 425 [1st Dept 2006]). The defamation claim should, however, be reinstated in part.
The statements that plaintiff is a "deadbeat misogynist," who "is not fit to sit" and "lacks ethics and morals," and that he worked for politicians who were "corrupt" lack a precise meaning and would be understood, especially in the context of a contested election, as nonactionable opinion (see Davis v Boeheim, 24 NY3d 262, 268-270 [2014]). However, the remaining statements — that plaintiff "attack[ed]" and "harass[ed]" Zelaya, that a police report was filed about this incident at the 7th precinct in March, and that plaintiff is "an abuser of women" who has "harassed women, verbally abused women, threatened women to benefit himself" and who "worked and campaigned for corrupt politician[s] while a government employee and earning your tax dollars" and "worked for corrupt politicians Hiram Monserrate and Vito Lopez who were convicted for abusing women, sexual harassment and mail fraud" — have clear, readily understood meanings and are capable of being proven true or false.
While some of these remaining statements are undisputedly true, plaintiff has presented sufficient proof at this stage to support the falsity of the statements that plaintiff "attack[ed]" and "harass[ed]" Zelaya, that plaintiff is "an abuser of women" who has "harassed women, verbally abused women, threatened women to benefit himself," and that plaintiff "worked and campaigned for corrupt politician[s] while a government employee and earning your tax dollars." This proof includes the allegations of the complaint, statements in plaintiff's February 1 and September 11, 2023 affidavits, which, contrary to defendants' contention, were not stricken by this Court in prior motion practice; Zelaya's prior, inconsistent police report; and the purported transcript of the audio recording of a conversation between plaintiff and Cline. Although the uncertified police report and "transcript" (unaccompanied by the audio recording itself) may not be admissible at trial, they may be considered, together with the admissible evidence, in opposition to defendants' motion to dismiss pursuant to CPLR 3211(g) (cf. Black, 236 AD3d at 428; Reeves, 232 AD3d at 23-24 [equating substantial basis standard with summary judgment standard]; Kovach v PJA, LLC, 128 AD3d 445, 446 [1st Dept 2015] [allowing consideration of evidence not in admissible form, including uncertified police report, in opposition to motion for summary judgment, so long as it is not the only evidence submitted]).
Plaintiff has also presented sufficient proof to support the conclusion that the reprinting of the summons with notice in a related litigation falls within the malicious litigation exception to the fair report privilege (see Civil Rights Law § 74; Gottwald v Sebert, 40 NY3d 240, 255 [2023]; RCI Hospitality Holdings, Inc. v White, 220 AD3d 430, 430 [1st Dept 2023]).
Plaintiff has not alleged, in a nonconclusory fashion, that anyone other than Zelaya was involved in the creation of the subject tweets. Accordingly, any claims based on the tweets should be dismissed as against Lugo, Betty Lugo for Judge, and Cline. Plaintiff has, however, presented sufficient proof to support the conclusion that Lugo/Betty Lugo for Judge, and Cline were involved in the creation and/or dissemination of the subject flyer (and of the underlying police report and civil litigation) and that they acted with actual malice.
Plaintiff was not required to plead special damages because the alleged defamatory statements amount to libel per se insofar as they "tend[] to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community" (Geraci v Probst, 15 NY3d 336, 344 [2010] [internal quotation marks omitted]; see Matherson v Marchello, 100 AD2d 233, 235-237 [2d Dept 1984], overruled on other grounds Laguerre v Maurice, 192 AD3d 44, 52-53 [2d Dept 2020]).
Whether plaintiff made comparable statements about Lugo in his own campaign materials is of no moment. Plaintiff also sufficiently alleged "to whom" the alleged defamatory statements were made, notwithstanding that he did not identify every recipient of the flyer or reader of the tweets (see generally Dillon v City of New York, 261 AD2d 34, 38 [1st Dept 1999]).
Given the reinstatement of some of plaintiff's claims, the award of attorneys' fees pursuant to Civil Rights Law § 70-a(1)(a) should be vacated. 
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 18, 2025